**DEAN WITTER REYNOLDS, INC.,**
**Plaintiff–Appellee,**

v.

**Warren SHEAR, Defendant–Appellant.**

**No. 73947.**

Supreme Court of Oklahoma.

July 17, 1990.

David W. Kirk, McKinney, Stringer & Webster, P.C., Oklahoma City, for plaintiff-appellee.

Peter G. Pierce, III and Kathy G. Merveldt, Carson, Pierce & Mueller, Oklahoma City, for defendant-appellant.

OPALA, Vice Chief Justice.

The dispositive issue is whether, in the face of an enforceable choice-of-law provision by which New York law is to govern disputes arising out of the contract, a party can invoke Oklahoma's fundamental law to challenge the validity of the same contract's arbitration clause. We answer in the negative.

Dean Witter Reynolds, Inc., a securities dealer [broker], obtained an arbitration award against one of its customers, Warren Shear [customer], based on a commodities trading debt. Although the customer had signed a "Customer Agreement" providing that "[a]ny controversy ... shall be settled by arbitration," [1] he refused to par-

---

1. The terms of the arbitration clause in suit are: "*Any controversy* between you and the undersigned arising out of or relating to this contract or the breach thereof, *shall be settled by arbitration* in accordance with the rules, then obtaining of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the under-

ticipate in the nonjudicial dispute resolution process.

Pursuant to § 811 of the Uniform Arbitration Act[2] [15 O.S.1981 §§ 801 et seq.] the broker then brought this proceeding in the district court to transmute the award into an executable Oklahoma judgment. The customer resisted by asserting three defenses: 1) the arbitration award cannot stand because the broker—on notice of his refusal to arbitrate—failed to obtain a court order compelling him to do so, 2) the arbitration proceeding should have been dismissed in accordance with a rule of the New York Stock Exchange Board of Arbitration and 3) the arbitration clause itself is void under Art. 23, § 8, Okl. Const.[3] Contending that no disputed issues of fact exist, the broker sought "summary judgment." It was argued the customer could not avoid the effects of the arbitration process because, among other things, he failed to seek either a stay of the proceeding[4] or vacation of the resulting award.[5] The customer maintained that a summary adjudication is precluded by the existence of unresolved issues of fact.[6]

signed may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorize you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and *the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.*" (Emphasis added.)

2. The terms of 15 O.S.1981 § 811 provide:

"*Upon application of a party to the agreement, the court shall confirm an award,* unless within the time limits imposed herein grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13 of this act." (Emphasis added.)

3. The terms of Art. 23, § 8, Okl. Const. are:

"*Any provision of a contract, express or implied,* made by any person, *by which any of the benefits of this Constitution is sought to be waived, shall be null and void.*" (Emphasis added.)

4. The terms of 15 O.S.1981 § 803(B) authorize the district court to stay, under certain conditions, an arbitration proceeding. This subsection provides:

"B. *On application, the court may stay an arbitration proceeding* commenced or threatened *on a showing that there is no valid agreement to arbitrate.* Such an issue shall be summarily tried. If the issue is resolved in favor of the moving party, the court may order a permanent stay of such proceeding. If the issue is resolved in favor of the opposing party, the court shall order the parties to proceed to arbitration." (Emphasis added.)

5. The terms of 15 O.S.1981 § 812 prescribe the grounds upon which an arbitration award may be vacated. This subsection provides in pertinent part:

"A. Upon application of a party, the court shall vacate an award if:
"1. The award was procured by corruption, fraud or other illegal means;
"2. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
"3. The arbitrators exceeded their powers;
"4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the requirements of this act, as to prejudice substantially the rights of a party; or
"5. There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 3 [15 O.S.1981 § 803] of this act and the party did not participate in the arbitration hearing without raising the objection.
"B. The fact that relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
"C. An application under this section shall be made within ninety (90) days after delivery of a copy of the award to the applicant. If predicated upon corruption, fraud or other illegal means, the application shall be made within ninety (90) days after such grounds are known or should have been known.
"* * *
"E. If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."

6. According to the customer's response to the broker's quest for summary judgment, the factual issues which had remained unresolved and hence preclusive of any summary adjudication were: 1) whether the customer sufficiently notified the broker of his refusal to participate in the arbitration process, 2) whether the customer's personal delivery of a letter to the arbitrators constitutes participation in that process and 3) whether the customer "requested and assert-

While Oklahoma law (the Uniform Arbitration Act) had been invoked to govern the process for converting the award into a judgment, *both parties relied upon New York law* in support of their respective positions. Indeed, the Customer Agreement does contain a choice-of-law provision which states that "this [contract] and its enforcement shall be governed by the laws of the State of New York." After judgment to the broker, the customer appeals.

Corrective relief is sought on but a *single* contention—that *both* the choice-of-law provision as well as the arbitration clause itself are void under Art. 23, § 8, Okl. Const.[7] The broker urges that we reject the customer's call to invalidate the contractual terms in controversy because he failed to challenge below the enforceability of the choice-of-law provision. With the broker's position we agree.[8]

Because neither the petition nor the answer[9] tenders a controversy over the validity of the contractual choice of law,[10] we treat the summary judgment motion as a plea for judgment on customer's failure to state a legal defense.[11] The customer made no attempt below to escape the binding effect of his prior assent to New York law's application. He could have, but did not, call for a judicial analysis of any of the facts supportive of a choice-of-law challenge under the Restatement (Second) Con-

---

ed prior to the arbitration hearing his right to a jury trial under Oklahoma law."

We note that *none* of these issues is germane to any of the statutory grounds for vacating an arbitration award (see 15 O.S.1981 § 812(A), *supra* note 5) and that, in any event, the customer did not seek modification or correction of the broker's award within the meaning of 15 O.S. 1981 § 812(E), *supra* note 5.

**7.** See *supra* note 3.

**8.** We need not address the broker's alternative argument that the invalidation of the arbitration and choice-of-law clauses, even if measured by the strictures of Oklahoma law, would in any event be of no consequence, because the Federal Arbitration Act [9 U.S.C. §§ 1 et seq.] *pre-empts* all state law. See in this connection *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *Securities Industry Ass'n v. Connolly,* 883 F.2d 1114, 1123 (1st Cir.1989). Cf. *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 1255–1256, 103 L.Ed.2d 488 (1989).

**9.** In neither the customer's answer nor his amended answer is the validity of the choice-of-law provision challenged; none of the allegations is directed to any of the factors contemplated by the Restatement. See *infra* notes 12 and 14.

The customer's pleadings state, in pertinent part:
"* * * *
"... [the customer] ... advised ... Plaintiff ... and all members of the Arbitration Panel on separate occasions prior to the purported Arbitration Hearing that he would not agree to submit to the Arbitration proceedings.

"... [customer] ... by letter ... refused and has not to this date signed the ... Submission Agreement submitted to him for his approval and signature.
"... In refusing to submit to [arbitration] ... [customer] at all times made clear that because of allegations of his account having been churned ... he believed the matter should be adjudicated by a Court of record.
"... [broker] ... over the [customer's] objections ... and without using the procedures outlined in 15 O.S.1981 § 803, obtained the invalid award....
"... [customer] further alleges as an affirmative defense that under Oklahoma law the arbitration clause in the customer's agreement is an implicit waiver of his constitutional right to a jury trial and is thus unenforceable.
"... [customer] further alleges ... that the arbitrators refused to dismiss the arbitration proceedings and refer the parties to the remedies provided by law even though ... [notice had been given] that he would not submit to the arbitration proceedings...."

**10.** *"Issues arise on the pleadings,* where a fact or conclusion of law is maintained by one party, and controverted by the other. There are two kinds. First, of law; Second, of fact." (Emphasis added.) 12 O.S.1981 § 552.

**11.** Although Rule 4(*l*), Rules for District Courts, 12 O.S.Supp.1986, Ch. 2, App., appears to prohibit motions for judgment on the pleadings, it is proper to seek judgment—as a matter of law—when the petition tenders no fact issues and the answer fails to raise a legal defense. Judgments on the pleadings are still used in the federal-court system and appear to be authorized in Texas. Hittner and Liberato, *Summary Judgments in Texas,* 20 St. Mary's L.J. 243, 252 (1989); Fraser, The Petition Under the New Pleading Code, 38 Okl.L.Rev. 245, 252 (1985).

flict of Laws § 187.[12] The choice-of-law clause *might* have been avoided, had the Restatement standard been invoked, *if* (a) application of the chosen state's legal system were "contrary to a fundamental policy" of the state with the materially greater interest in determining the question at hand and (b) the laws of the latter state would govern in the absence of an effective choice of law.[13]

As for the question whether Oklahoma law would have governed this controversy absent an effective choice of law, the "most significant relationship" test of the Restatement (Second) Conflict of Laws § 188 appears applicable.[14] The factors the Restatement contemplates under this section are the places of contracting, negotiation, performance and subject matter, along with the parties' "domicil, residence, nationality, place of incorporation and place of business." Application of this test clearly calls for a judicial analysis with a view to determining which state has the most significant relationship with the parties and the transaction. The customer did not seek the trial court's resolution of this matter.[15]

In sum, the customer did not timely challenge—by proper response to the "summary judgment" motion—the efficacy of the choice-of-law provision which made New York law controlling over all controversies arising from this contract. He thus cannot now invoke Oklahoma law to test the validity of the arbitration clause by the standards of this State's fundamental law.

JUDGMENT AFFIRMED.

HARGRAVE, C.J., and HODGES, ALMA WILSON· and SUMMERS, JJ., concur.

12. The full text of the Restatement (Second) Conflict of Laws § 187 states:
"(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
"(2) *The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision* in their agreement directed to that issue, *unless* either
"(a) the chosen state has no substantial relationship to the parties or the transaction · and there is no other reasonable basis for the parties' choice, or
"(b) *application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state* in the determination of the particular issue *and which*, under the rule of § 188, *would be the state of the applicable law in the absence of an effective choice of law by the parties.*
"(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law." (Emphasis added.)
See also generally Annot.: Validity and effect of stipulation in contract to effect that it shall be governed by law of particular state which is neither place where contract is made nor place where it is to be performed, 16 A.L.R.4th 967.

13. The customer should have tendered proof to support the factum of Oklahoma's materially greater interest in the controversy than that of New York and the facts showing Oklahoma's more significant relationship to the transaction and to the parties. See Restatement (Second) Conflict of Laws § 188, *infra* note 14.

14. The Restatement (Second) Conflict of Laws § 188 states:
"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the *most significant relationship* to the transaction and the parties under the principles stated in § 6.
"(2) *In the absence of an effective choice of law by the parties* (see § 187), *the contacts to be taken into account* in applying the principles of § 6 to determine the law applicable to an issue *include:*
"(a) *the place of contracting,*
"(b) *the place of negotiation of the contract,*
"(c) *the place of performance,*
"(d) *the location of the subject matter of the contract,* and
"(e) *the domicil, residence, nationality, place of incorporation and place of business of the parties.*
"These contacts are to be evaluated according to their relative importance with respect to the particular issue.
"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203." (Emphasis added.)

15. Neither does the customer complain on appeal that summary judgment had been improperly given because material issues of fact remain unresolved.

DOOLIN and KAUGER, JJ., concur specially.

LAVENDER and SIMMS, JJ., concur in result.

KAUGER, Justice with whom DOOLIN, J., joins concurring specially.

### A.

I concur that New York law applies to the arbitration agreement. Even had the majority found New York inapplicable, Oklahoma law could not be used to defeat arbitration because the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), pre-empts state law when it conflicts with the purpose of the Act.[1]

### B.

Even so, a question of public interest has been squarely tendered—is a contract for the purchase of commodities, which contains an agreement to submit disputes to arbitration, unconstitutional? The majority

has chosen not to confront the effect of the Okla. Const. art. 23, § 8 on such agreements. In essence, it provides that any provision of a contract by which any constitutional benefits are sought to be waived shall be null and void.

Nevertheless, any concern about the constitutionality of arbitration in Oklahoma is misplaced for the following reasons: 1) Statutory and common law arbitration exist co-extensively;[2] 2) The common law of England, as it existed at statehood, allowed arbitration, and it was incorporated into Oklahoma law;[3] Instead of forbidding arbitration, the drafters of the Oklahoma Constitution embraced it in three separate articles: art. 5, § 46; art. 6, § 21; and art. 9, § 42;[4] 3) "The common law is a dynamic and growing thing, and its rules arise from the application of reason to the changing condition of society";[5] 4) A collective bargaining agreement forms a new common law—the law of the workplace, and the Okla. Const. art. 2, § 15[6] forbids "any law

---

**1.** *Securities Indus. Ass'n v. Connolly,* 883 F.2d 1114, 1119 (1st Cir.1989), cert. denied, — U.S. ——, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990).

**2.** *House Grain Co. v. Obst,* 659 S.W.2d 903, 905 (Tex.App.1983).

**3.** Title 12 O.S.1981 § 2 provides:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."
Title 25 O.S.1981 § 29 provides:
"The rule of common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."
In *Scott v. Avery,* All E.R. 1, 7 (1856), the House of Lords Court ruled that under common law principles it would enforce agreements to arbitrate future disputes.
The framers of statutes and constitutional provisions must always be presumed to be familiar with settled rules of statutory and constitutional construction, and they may act on such rules and expect courts to follow them in construing such provisions, and courts should scrupulously

apply such rules. *Wimberly v. Deacon,* 195 Okla. 561, 144 P.2d 447, 450 (1943).

**4.** Okla. Const. art. 5, § 46 provides in pertinent part:
"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ...
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate; ...."
Okla. Const. art. 6, § 21 provides:
"The Legislature shall create a Board of Arbitration and Conciliation in the Department of Labor and the Commissioner of Labor shall be ex-officio chairman."
Okla. Const. art. 9, § 42 provides:
"Every license issued or charter granted to a mining or public service corporation, foreign or domestic, shall contain a stipulation that such corporation will submit any difference it may have with employees in reference to labor, to arbitration, as shall be provided by law."

**5.** *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 303 (Okla.1986).

**6.** Okla. Const. art. 2, § 15 provides:

impairing the obligation of contracts"; 5) Only if the terms of the contract are disputed does the right to trial by jury arise; [7] 6) Parties may choose to use the laws of another state which allow arbitration; [8] 7) If federal law is impacted, state law is pre-empted by the Federal Arbitration Act,[9] and the Labor Management Relations Act; [10] 8) Failure to recognize arbitration may result in a denial of equal protection under the 14th amendment to the constitution of the United States, and under the Okla. Const. art. 5, § 46, which forbids the enactment of special laws concerning the jurisdiction of arbitrators, or under art. 5, § 51 which prohibits the granting of exclusive rights and privileges to any association, corporation, or individual. If private parties are precluded from agreeing to submit disputes to arbitration concerning grievance arbitration under the Oklahoma Uniform Arbitration Act, 15 O.S.1981 §§ 801–818, so then, too, must the firefighters and police, 11 O.S.1981 §§ 51–101 to 51–113; [11] and 9) Because grievance arbitration awards are reviewable by the courts under the Oklahoma Uniform Arbitration Act, 15 O.S.1981 § 811, there is not a denial of access to courts which is prohibited under the Okla. Const. art. 2, § 6.[12]

In *Long v. DeGeer*, 753 P.2d 1327, 1330 (Okla.1987), the concurring opinion expressed concern that under art. 23, § 8, express or implied contractual waivers of the fundamental right to a jury trial appear to be unenforceable. Evidently, those are the same concerns expressed by the appellant here. Obviously, for the reasons discussed above, bargained-for grievance arbitration, which is not pre-empted by federal law, is not unconstitutional *per se*. The real questions presented are whether the parties agreed to an intentional voluntary relinquishment of a known right and whether they intended to waive the right to trial by jury, such as is permitted by 12 O.S.1981 § 591 [13] or 15 O.S.1981 § 803(A).[14]

Oklahoma's art. 23, § 8 is unique. Although no other state has an identical constitutional provision, California's art. I, § 16 is helpful. It provides that a jury trial may be waived in a civil action only in compliance with the statute.[15] California's

"No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties."

7. *Boyden v. Lamb*, 152 Mass. 416, 25 N.E. 609, 611 (1890).

8. *Dean Witter Reynolds, Inc. v. Shear*, —— Okl. ——, 796 P.2d 296 (Okla.1990).

9. See 9 U.S.C. §§ 1–14 (1982). *Securities Indus. Ass'n v. Connolly*, see note 1, supra.

10. Title 29 U.S.C. § 173(d) (1978) provides:
"(d) Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. The Service is directed to make its conciliation and mediation services available in the settlement of such grievance disputes only as a last resort and in exceptional cases."

11. See, *Maule v. Independent School Dist. No. 9*, 714 P.2d 198, 203–04 (Okla.1985).

12. *Heffner v. Jacobson*, 100 N.J. 550, 498 A.2d 766, 768 (1985). See also, "Arbitration and the Common Law", 10 Lawyers' Arbitration Letter 1, 4 (1986).

13. Title 12 O.S.1981 § 591 provides:
"The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal."

14. Title 15 O.S.1981 § 803(A) provides:
"A. On application of a party showing an agreement described in Section 2 of this act, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue raised and shall order arbitration if the court resolves the issue in favor of the moving party; otherwise, the application shall be denied."

15. Cal. Const. art. I, § 16 provides in pertinent part:
"Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-

Civil Procedure Code § 631, which is similar to Oklahoma's § 591, permits waivers. Under California law, the constitutional right to trial by jury may be waived by filing written consent with the judge or court clerk; by consenting in open court, and entering the consent into the record; or by failing either, to request a jury trial, to appear at trial, or to pay advance jury costs.[16] Because the issue here is the right to a jury trial, the California analysis in a comparable situation is useful.

The California Supreme Court in *Madden v. Kaiser Found. Hosp.*, 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 1178, 1186–87 (1976), found that § 631 presupposes a pending action, and that the statute relates to the way a party can waive the right to demand a jury trial, rather than to a trial before a judicial fact-finder. Section 631 does not purport to prevent parties from avoiding jury trial because their controversy was not submitted to a court of law in the first instance. It has always been understood that parties could avoid a jury trial, either by settling the underlying controversy, or by agreeing to a method of resolving the cause which need not invoke a judicial forum. However, the *Madden* Court did not suggest that one could be deprived of the right to trial by jury if, unknowingly, the person had executed a document which purported to exact a waiver.[17] *Under those circumstances, the agreement is avoidable.*

If we construe § 591 to mean that a jury trial in a contract case may only be waived by filed written consent, oral consent in court, or failure to appear at the trial,

negotiated settlements could be obliterated based on the allegation of the denial of the art. 23, § 8 right to jury trial. This is an absurd result, and we may not presume that the Legislature intended to enact an absurdity.[18] A reasonable construction of § 591 is that it applies to pending actions. Parties may use other forms of resolving a controversy by the intentional waiver of the right to jury.

Article 23, § 8 was not intended nor should it be construed to preclude arbitration. It would have been much easier for the framers of the Oklahoma Constitution to have excluded arbitration once and for all, rather than to have included it three times. They refused to do so. We may not do so by judicial fiat. Just as § 591 has been construed to allow the parties to knowingly waive a jury trial without violating the Oklahoma Constitution, so should the parties to a commodities contract be allowed to *knowingly* and *intentionally* waive the right to trial by jury by agreeing to submit contractual controversies to arbitration.

---

fourths of the jury may render a verdict. A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute. . . ."

**16.** Cal.Civ.Proc.Codes § 631 (West Supp.1989) provides in pertinent part:
  "(a) Trial by jury may be waived by the several parties to an issue of fact in any of the following ways:
  (1) By failing to appear at the trial.
  (2) By written consent filed with the clerk or judge.

(3) By oral consent, in open court, entered in the minutes or docket.
(4) By failing to announce that a jury is required, at the time the cause is first set for trial, . . .
(5) By failing to deposit with the clerk, or judge, advance jury fees . . ."

**17.** See, *Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501, 256 Cal.Rptr. 6, 10 (1989); *Ramirez v. Superior Court*, 103 Cal.App.3d 746, 163 Cal.Rptr. 223, 229 (1980).

**18.** *Johnson v. Johnson*, 674 P.2d 539, 542 (Okla. 1983).